IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

VANESSA HONORATO,

                Plaintiff,

v.                                               OPINION and ORDER

MT. OLYMPUS ENTERPRISES, INC.,
MT. OLYMPUS RESORTS, LLC., and               20-cv-903-jdp
MT. OLYMPUS WATER & THEME PARK RESORT,

                Defendants.

---

Plaintiff Vanessa Honorato and her family celebrated a birthday with a trip to the Mt. Olympus water park in Wisconsin Dells. But the day ended in tragedy when Honorato's three-year old daughter Maryana was fatally struck by a car in the Mt. Olympus parking lot. Honorato brings wrongful death and survival claims against the business entities that run Mt. Olympus. Defendants assert a counterclaim against Honorato, alleging that her own negligence contributed to the accident.

Both sides move for summary judgment. Defendants deny playing any part in the accident, which all agree was caused by a distracted driver. But Honorato's expert has identified two deficiencies in the design of the parking lot that that she says contributed to the accident. However, the deficiencies were part of the layout of the lot completed in 2007. Because Honorato's claims of negligence arises from the deficient design of an improvement to real estate, her claims are barred by the ten-year statute of repose in Wis. Stat. § 893.89. The court will grant summary judgment to defendants on this ground.

UNDISPUTED FACTS

The court begins with a comment about Honorato's presentation of the summary judgment evidence. Honorato simply didn't follow the court's summary judgment procedures. She didn't respond to defendants' proposed findings of fact, instead stating that her "proposed statement of facts . . . are incorporated" into her brief. Dkt. 121, at 2. But that's not allowed. *See* Dkt. 58, Summary Judgment Procedure II.A.2 and II.D. She submitted proposed findings of fact in support of her own summary judgment motion on defendants' counterclaim. Dkt. 113. Defendants, as allowed under the procedures, provided supplemental proposed findings of fact with their opposition. Dkt. 118. Honorato didn't respond to those proposed facts either. The court requires a listing of each proposed findings of fact, and a response to each one, so that it can identify the specific facts in dispute and determine whether there is evidence to support each party's version of the events. Honorato's failure to follow the court's procedures has frustrated that effort. Accordingly, the court will disregard any fact in Honorato's brief that is not supported by a proposed finding of fact that includes a citation to admissible evidence.

The following facts are undisputed except as noted.

Plaintiff, Vanessa Honorato, is a citizen of Illinois. Defendants are the three business entities that own and run the Mt. Olympus resort and water park in Wisconsin Dells: Mt. Olympus, Enterprises, Inc.; Mt, Olympus Resorts, Inc.; and Mt. Olympus Water & Theme Park Resort.

The Mt. Olympus complex includes, among other facilities, the Hotel Rome, an indoor waterpark, and an outdoor waterpark. The entrance to the waterparks is adjacent to the parking lot for overnight guests of the Hotel Rome. (A good overview of the property and the parking lot where the accident happened is provided in Figures 1 and 2 of Dkt. 93-6, at 3–4.) The

parking lot for day pass holders lies down a roadway to the west of the hotel lot. The basic layout of the Hotel Rome parking lot was established in 2007 when the aisles were reoriented to facilitate snow removal. At some point between 2014 and 2015, a pedestrian walkway was created along the perimeter of the northern half of the hotel lot.

On August 7, 2018, Honorato and some family members drove from Illinois to the Mt. Olympus outdoor water park in Wisconsin Dells, Wisconsin. They parked in the day pass lot. At the end of the day, Honorato and her family left the water park and headed to their car. Honorato and her family members did not take the pedestrian walkway along the northern perimeter of the lot. Instead, they cut through the hotel lot directly toward the roadway to the day pass lot, walking perpendicular to the aisles and between the parked cars.

Honorato's teenaged sister, Daniela, was holding Maryana's hand as they walked through the parking lot. But Maryana broke free to catch up with her grandparents, darting into a traffic aisle. Jeanne Kasza, another guest at the water park, was driving down the aisle toward the exit. She was distracted by a conversation with her daughters and struck Maryana. Maryana was unresponsive when medical help arrived and died soon after. Kasza's insurer paid Honorato $500,000 to settle all claims against Kasza or her insurer.

Honorato is a citizen of Illinois; defendants are citizens of Wisconsin; the amount in controversy exceeds $75,000. The court has jurisdiction on the basis of diversity of citizenship under 28 U.S.C. § 1332.

ANALYSIS

Honorato brings a claim for wrongful death on her own behalf and survivorship claim on behalf of Maryana's estate. Defendants bring a counterclaim against Honorato seeking contribution for her negligence in the accident. Both sides move for summary judgment.

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Honorato says that discovery is still open, and that some new evidence could show that facts are disputed. Dkt. 121, at 1. But it's too late for that: to avoid summary judgment, the non-movant must set forth specific facts supported by admissible evidence that create a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is the "put up or shut up" moment, when the parties must show that they have sufficient evidence to support their claims to warrant a trial. *Johnson v. Cambridge Indus. Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (citation omitted).

## A. Wisconsin law applies to Honorato's claims

The court concluded previously that Wisconsin law applies to this case. Dkt. 116. Honorato asks the court to reconsider that decision and to apply Illinois law. Dkt. 121, at 21. The choice of law affects the case in several ways, notably that Wisconsin law caps loss of society and companionship damages for a parent's loss of a child at $500,000, but Illinois law does not. Wis. Stat. § 895.04(4); 740 Ill. Stat. 180/2. And, of particular importance in this opinion, certain claims against property owners are subject to a statute of repose in Wis. Stat. § 893.89.

In its earlier order, the court applied Wisconsin's choice-of-law rules, because the forum state's laws govern choice-of-law analysis in diversity cases. *McCoy v. Iberdrola Renewables, Inc.*,

4

760 F.3d 674, 684 (7th Cir. 2014). Under Wisconsin's choice-of-law rules, there is a presumption that the law of the forum state applies unless it is clear that the non-forum state has more significant contacts with the claims at issue. *Drinkwater v. Am. Family Mut. Ins. Co.*, 2006 WI 56, ¶ 40, 290 Wis. 2d 642, 714 N.W.2d 568; S*tate Farm Mut. Auto Ins. Co. v. Gillette*, 2002 WI 31, ¶ 51, 251 Wis. 2d 561, 641 N.W.2d 662. The court concluded that Illinois's contacts with Honorato's claims were not more significant than Wisconsin's: Honorato purchased her tickets in Illinois, but defendants are located in Wisconsin, the alleged negligence occurred in Wisconsin, and, most important, the accident happened in Wisconsin.

Honorato contends that Illinois law should apply because a dismissed defendant in the case, Wisconsin Dells Visitor and Convention Bureau, used targeted marketing strategies in Illinois.[1] She says these advertising tactics prompted her to buy her tickets to Mt. Olympus. But the marketing efforts in Illinois don't significantly shift the choice-of-law analysis. *See Kaiser v. Monroe Clinic, Inc.*, No. 19-cv-315-jdp, 2020 WL 4364179, at *3 (W.D. Wis. July 30, 2020) (a hospital's advertising in Illinois was only a minor contact for choice-of-law purposes in a medical malpractice case that didn't relate to advertising). Wisconsin's contacts to this matter are simply stronger than those of Illinois, largely because the injury occurred in Wisconsin, which is what matters most. *NCR Corp. v. Transp. Ins. Co.*, 2012 WI App 108, ¶¶ 12–13, 344 Wis. 2d 494, 501, 823 N.W.2d 532, 535. Wisconsin law applies.

---

[1] The underly facts on this topic are presented in Honorato's brief without corresponding proposed findings of fact. The court would disregard those facts, but defendants do not dispute that Wisconsin Dells Visitor and Convention Bureau marketed to Illinois residents. And that basic fact does not affect the choice-of-law decision.

**B. Honorato's claims are time-barred**

The operative complaint, Dkt. 74, asserts two causes of action, one for "premises liability—wrongful death," and one for "premises liability—survivorship." A claim for wrongful death of a minor seeks compensation for the losses of the surviving family members, in this case Honorato's loss of Maryana's society and companionship. A survivorship claim seeks compensation for the decedent's own suffering before death. Both claims here are based on "premises liability," which under Wisconsin law, could involve a claim under the common law of negligence and a claim under the safe-place statute, Wis. Stat. § 101.11.

Wisconsin's safe-place statute is a negligence statute that imposes a heightened duty on building owners and employers to construct, repair, and maintain buildings safely. *Mair v. Trollhaugen Ski Resort*, 2006 WI 61, ¶ 19, 291 Wis. 2d 132, 145, 715 N.W.2d 598, 604. The safe-place statute applies to claims relating to unsafe conditions found at property covered by the statute. A common-law claim of negligence applies to the acts that are alleged to have produced the unsafe conditions. Under the right circumstances, a plaintiff may bring both types of claims based on the same unsafe condition. *Megal v. Green Bay Area Visitor & Convention Bureau, Inc.*, 2004 WI 98, ¶ 23, 274 Wis. 2d 162, 682 N.W.2d 857. Defendants assume that Honorato intended to assert both types of claims.

The safe-place statute applies differently depending on the types of unsafe condition that arises from a breach of the duty to maintain a safe place. The three types of unsafe conditions are "structural defects," "unsafe conditions associated with the structure," or "unsafe conditions unrelated to the structure." *Barry v. Emps. Mut. Cas. Co.*, 2001 WI 101, ¶ 21, n.4, 245 Wis. 2d 560, 570, 630 N.W.2d 517, 522. The third category, which includes such

temporary conditions as a slippery condition caused by an unexpected spill, is not at issue in this case.

The critical issue here is whether Honorato's claims against defendants are based on structural defects or unsafe conditions associated with the structure. A structural defect involves a defect in the original construction. It arises

> by reason of the material used in construction or from improper layout or construction. Furthermore, a structural defect arises from a breach of the duty to construct a safe building.

*Mair*, ¶ 22 (citations omitted). On the other hand, an unsafe condition associated with the structure typically concerns the maintenance or repair of the structure. It arises

> from "the failure to keep an originally safe structure in proper repair or properly maintained." These "conditions" arise from a breach of the statutory duty to repair or maintain the property and generally involve the structure falling into disrepair or not being maintained in a safe manner.

*Id.*, ¶ 23 (citations omitted).

The distinction between these categories matters in two ways, relating to notice and the statute of repose. As for notice, the building owner is charged with knowledge of structural defects, but the building owner is responsible only for unsafe conditions associated with the structure only after receiving actual or constructive notice of the unsafe condition. As for the statute of repose, structural defects are subject to a statute of repose that precludes any claim brought after the "exposure period."

The pertinent part of the applicable statute provides:

> No cause of action may accrue and no action may be commenced . . . against the owner or occupier of the property or against any person involved in the improvement to real property after the end of the exposure period, to recover damages for any injury to property, for any injury to the person, or for wrongful death, arising out of any deficiency or defect in the design, land

7

> surveying, planning, supervision or observation of construction of, the construction of, or the furnishing of materials for, the improvement to real property.

Wis. Stat. § 893.89(2). The exposure period applicable to Honorato's claim is ten years. Wis. Stat. § 893.89(1) (2017–18).[2] The exposure period begins when the improvement in question is substantially complete; it runs without regard to the timing or plaintiff's injury or discovery of the hazard. *Mair*, ¶ 27 (quoting *Tomczak v. Bailey*, 218 Wis.2d 245, 252, 578 N.W.2d 166 (1998)).

In their motion for summary judgment, defendants deny that they played any role in causing Maryana's death. But Honorato's expert, Gordon E. Meth, identified two defects in the Hotel Rome parking lot that he says contributed to the accident. Dkt. 93-6. First, the parking aisles were oriented parallel to the face of the water park entrance rather than perpendicular. This configuration is contrary to parking lot safety standards because it induces pedestrians to move between parked cars and across the aisles rather than along the aisles, thus reducing visibility between drivers and pedestrians. *Id.* at 7–8. Meth concluded that because the parking lot's aisles were parallel, Kasza had only 12 feet of visibility at the site of the accident, which was not enough to see, react to, and brake for Maryana. *Id*. at 8. Had the aisles had been perpendicular to the water park building, Kasza would have had substantially greater visibility and thus more time to react. *Id*.

The second defect is that the parking lot lacked a marked crosswalk and pedestrian warning signs where Honorato and her family crossed. *Id*. at 7–8. Parking lot safety standards

---

[2] The exposure period was amended to seven years in 2017, effective April 5, 2018. 2017 Wis. Act 235. The amending legislation does not state any intent that the legislation would apply retroactively to change the exposure period for improvements completed before the amendment.

call for marked crosswalks and warning signs along foreseeable pedestrian routes, particularly in parking lots with parallel aisle orientations. The path that the Honoratos took through the parking lot was foreseeable because it was the direct route to the roadway to the day pass lot. Meth cites research concluding that marked crosswalks and warning signs substantially improve visibility and pedestrian safety. *Id.* at 11. Meth's report is the only evidence that Honorato has to establish defendants' negligence. Honorato does not contend that the parking lot was deficiently maintained or in disrepair.

The deficiencies identified by Meth arise from the design and layout of the parking lot. Those deficiencies were present when the current layout of the parking lot was completed in 2007. At that time, the lot was redesigned to change the orientation of the aisles to facilitate snow removal. The most direct route from the waterpark exit to the roadway to the day pass lot was straight through the middle of the lot, and yet no pedestrian path was marked along this direct route. The accident at issue here happened more than ten years after the parking lot layout was complete, and thus Honorato's safe-place claim is barred by the statute of repose in Wis. Stat. § 893.89.

The statute of repose would also doom a common-law negligence claim for any act in creating the dangerous parking lot. Wis. Stat. § 893.89 is not limited to the safe-place statute. After the exposure period runs, the statute protects the owner or occupier of the property, or anyone involved in the improvement of real property, from any claim arising from the design, planning, or construction of an improvement to real property.

Honorato's response to defendants' argument on the statute of repose is a single paragraph. Dkt. 121, at 24–25. Honorato does not dispute that she alleges structural defects in the parking lot, and she does not dispute that the layout of the parking lot constitutes an

improvement to real property. Instead, she suggests that the statute of repose should not apply because defendants made subsequent changes to the parking lot: they created a walkway on the northern perimeter of the hotel parking lot in 2014 or 2015, and added striping to the walkway in 2017 and 2018. But the statute of repose runs from date of the action by defendant that led to the injury. *Mair*, ¶ 27. Honorato says that a jury could find that the later changes were inadequate to remedy the unsafe layout of the lot. But the newer walkway did not cause any injury to Maryana. Honorato contends that she was injured by the combination of the orientation of the aisles and the lack of a walkway along the most likely path through the lot. Those features were present when the redesign of the lot was completed in 2007.

Honorato cites no authority that a separate, subsequent improvement to a piece of real estate restarts the exposure period. And there is a good reason to reject such a rule: it would provide an enormous disincentive to make subsequent improvements if doing so forfeited the building owner's statutory immunity from suit for any original design or construction defects.

CONCLUSION

The court concludes that Honorato's claims against defendants are barred by the statute of repose in Wis. Stat. § 893.89. The court need not consider defendants' other bases for summary judgment. Honorato's motion for summary judgment is denied as moot.

ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment, Dkt. 90, is GRANTED.
2. Plaintiff's motion for summary judgment, Dkt. 105, is DENIED as moot.

3. The clerk of court is directed to enter judgment for defendants and close the case.

Entered December 23, 2021.

                                BY THE COURT:

                                /s/

                                _____
                                JAMES D. PETERSON
                                District Judge